Ronald GEHNER and Janet Gehner Cardinale, Plaintiffs-Appellants,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a corporation, Defendant-Respondent.

No. 32930.

St. Louis Court of Appeals.

Missouri.

May 21, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied June 27, 1968.

Schwartz, Schwartz & Gilden, St. Louis, for appellants.

Henry S. Stolar, Hocker, Goodwin & MacGreevy, St. Louis, for respondent.

TOWNSEND, Commissioner.

The defendant insurance company issued to The Linen Thread Company, Inc., its group life insurance policy affording coverage to the employees of the latter and, to evidence his interest thereunder, a certificate of insurance was issued to Elmer W. Gehner. Thereafter on August 3, 1956, Mr. Gehner suffered a stroke which caused him to become totally disabled. His employment ceased on that date. He continued totally disabled until his death on April 6, 1959 at age fifty-two. The plaintiffs, children of Elmer W. Gehner, maintain this action because of the refusal of defendant to pay them, the beneficiaries designated under the terms of the policy, the amount of insurance provided thereunder. The trial court sustained defendant's motion for judgment on the pleadings. Plaintiffs' motion to set aside the judgment and for new trial was overruled and this appeal from the judgment on the pleadings was taken.

Plaintiffs' petition pleaded the Extended Death Benefit clauses of the certificate.

By its motion for judgment on the pleadings defendant has contended that there was no insurance coverage on the life of Mr. Gehner at the time of his death, and in support of that position it has also summoned the Extended Death Benefit provision, the insuring clause, which defines and delimits the duties of the defendant. In the certificate of insurance it is recited:

"EXTENDED DEATH BENEFIT: It is provided in said policy that if due proof of the death of the Employee shall be submitted in writing to the Society within one year after the death of the Employee whose insurance thereunder shall have terminated due to termination of employment, the Society will pay to the person or persons entitled thereto under the provisions of the policy the amount of the insurance for which the Employee's life was last insured under the policy, provided due proof shall be furnished to the Society that:

1. the Employee's death occurred within thirty-one days following such termination of employment, or

2. at the date of such termination of employment the Employee was totally disabled by bodily injury or disease so as to be prevented from engaging in any occupation for compensation or profit, and that such total disability continued from such termination of employment to such death, and that such death occurred (a) within a period after such termination of employment not longer than the time the Employee's insurance thereunder had theretofore been continuously in force and in any event not longer than twelve months, (b) while the policy was in full force and effect, (c) before the Employee attained the sixty-fifth anniversary of his date of birth."

The opinion of the trial court recited: "In the instant case the plaintiffs seek to recover under the extended death benefit of the policy involved, claiming it is ambiguous. The court has duly considered plaintiffs' contention and is unable to find any ambiguities in connection therewith. * * * The policy must be read as written, and in the Court's opinion it is plain, definite, certain, and not ambiguous. Therefore, defendant's second amended motion for judgment on the pleadings is sustained. Judgment entered for defendant."

The contentions of the respective parties pose the question of whether the lettered clauses (a) (b) and (c) above under numeral 2 are to be read disjunctively or conjunctively. As indicated the trial court has had no difficulty with such clauses and has by its ruling found in effect that they are to be applied conjunctively.

The appellants here charge the trial court with error in finding no ambiguity in that it failed to read the provision in question as it would be read by a layman of common understanding, in the light of the entire

certificate. They then charge the court with failing to distinguish between determination of the existence of an ambiguity and the resolution of ambiguity by means of construction. We reach the first of such charges only if the second is ruled adversely to appellants. Taking these complaints in inverse order, the argument runs that the determination of whether or not there is an ambiguity raises an issue of law; only if that is the issue is a motion for judgment on the pleadings appropriate. Struckhoff v. Thompson, Mo.App., 241 S. W.2d 39. On the other hand, if there is admittedly an ambiguity, then resolving that ambiguity by means of construction involves an issue of fact; if such be the situation a motion for judgment on the pleadings should not be sustained, citing Ingle v. City of Fulton, Mo.App., 268 S.W. 2d 600. Assuming for the moment the validity of the distinctions made by the appellants, the question would then arise: Did the trial court, in stating that there was no ambiguity, really rule that there was no ambiguity or did it thereby merely solve a situation of doubt presented to it?

■ As an affirmative defence the defendant set up non-compliance with clause (a) and so tacitly claimed that compliance only with conditions (b) and (c) (plaintiffs pleaded only compliance with clause (c)) gave plaintiffs no cause of action. Although not expressly so stated defendant thereby asserted that there was no ambiguity in the conjuncture of (a) (b) and (c). That part of the judgment above quoted leaves no doubt that the appellants presented to the trial court the question of whether or not the Extended Death Benefit provision contained an ambiguity. In addition appellants' brief states: "Respondent did not raise the question of ambiguity in its motion * * *. Appellants likewise, did not assert in their original and amended petition that ambiguity existed * * *. Only by way of opposition to Respondent's motion did Appellants assert that there was ambiguity in the provision in question and that therefore

such ambiguity should be resolved in their favor and strictly against the insurer."— There was plainly set forth for the attention of the court—and for its ruling—the problem of the *existence* of any doubt of the meaning of the words used in (a), (b) and (c), either because of the intrinsic meaning of any word or because of their juncture. Thus there was presented an issue of law and a motion for judgment on the pleadings was proper. The court ruled on the motion. The second of appellants' briefed points must be ruled against them.

As to appellants' first point: Did the trial court err in holding that there was no ambiguity in that part of the Extended Death Benefit provision here in question?

The contention of appellants that the extended death benefit provision is ambiguous rests upon the conjuncture of clauses (a), (b) and (c) in the final paragraph of the provision as above quoted. No connecting word joins any two of such clauses and therefore, say appellants, on its face the wording does not tell whether those three clauses are to be read disjunctively or conjunctively. Plaintiffs' petition alleged facts in accord with clause (c); defendant's motion rested upon non-compliance with clause (a).

Appellants advance two propositions which they say must be applied as tests in determining whether an ambiguity exists in an insurance contract: 1. The whole instrument must be considered; 2. "The court will attempt to ascertain whether a reasonable basis for a difference of opinion as to meaning exists * * * from the point of view of what would be reasonable or unreasonable to a person of common understanding and intelligence who would be expected to become an insured under the policy." In the endeavor to apply these tests appellants resort to other portions of the certificate and cite three series of lettered or numbered clauses from unrelated subject-matters where the draftsman has, in each series, stated possible alterna-

tives in such terms as to preclude any doubt of meaning. We consider the detail of each. (1). "The amount of such converted life insurance shall in no event exceed the lesser of (a) * * * and (b) * * *." (2) "The insurance * * * shall cease automatically upon the occurrence of any of the following events: (a) * * * (b) * * * (c) * * *." (3) "* * * will be payable in a single sum to the first surviving class of the following classes of successive preference beneficiaries * * *." In addition appellants refer us to that part of the extended death benefit provision wherein the defendant promises to pay if death occurs within thirty-one days following termination of employment *or* [where death occurs in accordance with the terms of the provision here in question]. From all this appellants conclude that "The insurer has created an 'atmosphere' in which the layman would read the final series of lettered clauses in question"—those here in controversy—"as being disjunctively joined".

In this purported establishment of an "atmosphere of the disjunctive" the appellants have rested their arguments upon the illustrations cited. In each such illustration the draftsman has stated in the alternative events, any one of which would have a prescribed result. In each such illustration the alternatives have been expressed in such precise terms that the alternatives are mutually exclusionary of one another. Thus, in illustration (1), if the lesser sum is to be the amount of the converted insurance the larger amount stated can have no significance. In illustration (3), if a designated class of beneficiaries is to be first any other stated class is precluded from being first.

The precision of the draftsman in framing the cited illustrations has been such as to prevent the accrual of any doubt or uncertainty as to the exact meaning of the words used. In the use of such disparate, unrelated, but nevertheless exact, clauses, we perceive no relevance to any controversy about disjunctivity. We do not discern therein the creation of such an "atmosphere of the disjunctive" as would cause the ideal person of "common understanding and intelligence", contemplated by plaintiffs, to come to the conclusion that the controversial clauses (a), (b) and (c) should be read in the disjunctive. We have been unable to comprehend the probable mental processes of such a person—an intending applicant for insurance—by which, after contemplation of the illustrations, any concept of the disjunctive or of the conjunctive would even suggest itself to him.

Turning to an analysis of the controverted part of the subject provision, one finds that it has no relation to a death occurring while the insured employee is still in the employment of the named employer. The provision assumes that the employee's insurance ceases with the termination of his employment, but then proceeds to develop a specialized treatment of the terminated employee. By this special provision the insurance company promises to pay to the properly designated beneficiary the amount of insurance for which the insured employee's life was last insured under the policy if certain named conditions precedent have been satisfied. Considering in order the situations in which it is contemplated that the insurer may come under the duty to perform its promise to pay to the beneficiary, the first such situation is the simple one of death of the employee occurring within thirty-one days after termination of employment. Here the conditions precedent to the duty of the insurer to pay are only two:

1. Filing of proof of death of the named employee within one year after death.

2. Furnishing due proof that death occurred within thirty-one days after termination of employment.

In this first situation cause of termination of employment is immaterial. Disability plays no part.

The second situation envisaged by the specialized provision is that where the

employee is totally disabled at the time of termination of employment. Here we have the same promise to pay the insured's named beneficiary and in the same amount as that found in the first situation, but here the stated conditions precedent are enlarged. Seriatim, those conditions precedent are:

1. Filing of proof of death of the named employee within one year after death.

2. Furnishing due proof that

(1) The employee was totally disabled at the time of termination of employment.

(2) Such disability continued to time of death.

(3) Death occurred within twelve months after termination of employment, while the policy was in force, before the employee reached the age of 65.

■ The internal evidence of the Extended Death Benefit provision itself has well foretold the holding of the trial judge. In respect to the numbered part 2 and repeating what has just been said, we find the insurer's promise to pay "provided due proof shall be furnished to the Society that * * *" and thereupon three parts of that due proof are set forth. The first part is joined to the second by the conjunction "and". Likewise the second and third parts are joined by "and". (The conjunctivity of this series of clauses is ignored by the appellants in their effort to establish the kind of atmosphere which surrounds an intending applicant). Accordingly, all three parts of this condition (due proof) must be satisfied in order to put the promisor-insurer under the duty to pay. No one part is independent of the others. No semblance of an argument about disjunctivity could be maintained. Hence there was no ambiguity about the

430 S.W.2d—40

necessity of the concurrence of all three parts of the condition.

The third part of the condition relates to death but mere death is not the condition precedent. The true condition is the time of death as narrowed and delimited by the certificate. As defined by the third conjunctive part of the condition the death must be one occurring while the principal policy is in force, within twelve months after termination of employment, before the insured reaches age 65. Looking to the precise wording of the third part of the condition we see that the reference is to the occurrence of death. By the simplest rules of grammatical construction, the clauses (a), (b) and (c) which follow are modifiers of the death specified in the third part of the conjunctive condition precedent. All three being modifiers all enter into the delineation of that death. Hence no problem of disjunctivity rears its ugly head.

Holding that by the plain principles of English composition and grammar there is no question of ambiguity in the joined use of clauses (a), (b) and (c), there is no occcasion to indulge in an extended exposition of the absurd results which could follow if (a), (b) and (c) were held to have been used in the disjunctive, e. g. death of the disabled employee at age 75, ten years after termination of employment, but while the policy was still in force.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, the judgment is affirmed.

ANDERSON, P. J., WOLFE, J., and GEORGE W. CLOYD, Special Judge, concur.